UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**CHRISTINE KRYWYJ**,

              Plaintiff,

v

**MPS GROUP, INC.**, a domestic profit
corporation, and **GUILLERMO NINO,
JR.**, an individual,

              Defendants.

_____/

Case No.:

Hon:

Mag:

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, Christine Krywyj, by and through her attorneys, Ayanna D. Neal

of GREWAL LAW PLLC, and for her Complaint against MPS Group, Inc. ("Defendant MPS

Group" or "MPS Group") and Guillermo Nino, Jr. ("Defendant Nino, Jr.") states as follows:

## PARTIES, JURISDICTION AND VENUE

    1.     This is an action stating a federal course of action pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 USC 2000e *et seq*.

    2.     This Honorable Court has "federal question" jurisdiction pursuant to 28 USC §

1331 for the reason that the Plaintiff's Complaint states claims pursuant to Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 USC § 2000e *et seq*.

    3.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28

USC § 1367(a) to hear and decide claims arising under state law that are so related to the claims

within the original jurisdiction of this Court that they form part of the same case or controversy.

    4.     Venue is proper in this judicial district pursuant to 28 USC § 1391 for the reason

that MPS Group is a resident in this judicial district.

5.      Plaintiff timely filed her Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") attached as **Exhibit A**.

6.      Plaintiff subsequently received her Right-to-Sue Letter from the EEOC, attached as **Exhibit B**.

7.      Plaintiff timely filed this Complaint within 90-days of receiving her Right-to-Sue Letter from the EEOC.

8.      Plaintiff, Christine Krywyj ("Ms. Krywyj") at all times relevant herein, was a resident of the City of Clio, Genesee County, Michigan.

9.      Defendant MPS Group, Inc. is a domestic profit corporation authorized to and doing business in Oakland County, Michigan.

10.     Defendant Nino, Jr., at all times relevant herein, was a resident of the City of Gibralter, Wayne County, Michigan.

## BROAD ALLEGATIONS

11.     On or about August 8, 2017, Ms. Krywyj began her employment as a field technician for Defendant MPS Group.

12.     On or about June 17, 2023, Ms. Krywyj was sexually assaulted and raped by her co-worker, Defendant Nino, Jr.  She reported that assault to Defendant MPS Group that same day and emailed them the following day about the assault.

13.     Following her report, Ms. Krywyj was placed on paid administrative leave pending investigation.

14.     Following her complaint, Ms. Krywyj faced retaliation from Defendant MPS Group including, but not limited to, reduction in hours, reduction in pay, and general mistreatment/poor treatment from her co-workers and supervisors.

15.     Additionally, Ms. Krywyj was not assigned for positions or work jobs by Defendant MPS Group because her attacker and still co-worker, Defendant Nino, Jr., was working those jobs despite Defendant MPS Group's ability to have someone else within the company replace that worker.

16.     At all relevant times, Ms. Krywyj performed her job duties and responsibilities in a manner that, at a minimum, demonstrated that she was qualified to retain and work in her position.

## SPECIFIC FACTUAL ALLEGATIONS

17.     Ms. Krywyj was a field technician driver for Defendant MPS Group's Industrial Services Group which at its core cleans client's industrial workspaces utilizing various technologies.

18.     As a field technician driver, Ms. Krywyj, among other responsibilities, drove certain vehicles for Defendant at industrial and manufacturing sites in both Michigan and other states.

19.     Ms. Krywyj was one of several field technician drivers for Defendant MPS Group.

20.     Defendant Nino, Jr. works for Defendant MPS Group as an operator and sometimes works as a supervisor.

21.     Over the course of 2021-23, Ms. Krywyj had a friendship with Defendant Nino, Jr. in which they spent time with one another and texted one another.

22.     Both parties expressed "love" for one another, but the Parties did not have a boyfriend-girlfriend relationship as Defendant Nino, Jr. lived with his "ex-girlfriend" and Ms. Krywyj explicitly told him that she did not want a sexual relationship with him.

23.     However, on many occasions, Defendant Nino, Jr. expressed that he wanted to marry Ms. Krywyj.  He spoke to her about having a child with her, buying a ring for her and sharing a life together.

24.     Ms. Krywyj's refusal to have more than a verbal and friendly relationship angered Defendant Nino, Jr. and he asked her to leave him because "her actions" did not show that she loved him.

25.     On or about June 16, 2023, Ms. Krywyj drove to Kansas City, MO to make a delivery for Defendant MPS Group.  She stayed the night in a hotel paid for by Defendant MPS Group.

26.     Defendant Nino, Jr. arrived at the Kansas City work site separately.

27.     On the early morning of June 17, 2023, Ms. Krywyj and Defendant Nino, Jr. were in his hotel room. There, Defendant Nino, Jr. sexually assaulted and raped Ms. Krywyj, who did not consent to have sexual relations with him.

28.     Defendant Nino, Jr. continually texted Ms. Krywyj following the sexual assault and rape wondering why she wasn't responding to him.  Finally, she responded and texted, "We are done."

| Received | Jun 17, 2023 2:50:10 PM | F****** hate myself for this |
|---|---|---|
| Received | Jun 17, 2023 2:49:54 PM | All right I'm gone gone so you can feel safe going up in there I have no words for us right now I have nothing for you I can't believe this |
| Received | Jun 17, 2023 12:28:05 PM | Fuck me leave me. You say you love me. But your actions say different. Love is not what you want. I won't trust you. Your not different. Used me. I don't want anything to do with you anymore. Thanks for the added darkness in my heart. You want me THEN SHOW ME!!! words are just LIES. FUCKING WISH I WAS NOT HERE!!!! . |
| Received | Jun 17, 2023 11:06:58 AM | Idk maybe because I do love you. |
| Sent | Jun 17, 2023 11:06:11 AM | Like this?? Nothing is wrong!!! |
| Sent | Jun 17, 2023 11:06:00 AM | Why are you up in your feelings |
| Sent | Jun 17, 2023 11:05:52 AM | What are you talking about??! |
| Received | Jun 17, 2023 11:01:07 AM | No excuse. Wish I understood WHY ? Everything was special for me. It was wishful thinking that all you been saying to me would be for you also. Wish I had not be here. I won't come anymore. I'm the one hurt and I'm saying sorry and have to sit like a good little boy and hurt in silence. I BELIEVED YOU. shame on me. |

| Received | Jun 17, 2023 2:55:47 PM | Wanna be with me, love you, married, live together. All the things you said. That was a lie. |
|---|---|---|
| Received | Jun 17, 2023 2:54:47 PM | Do you |
| Received | Jun 17, 2023 2:54:35 PM | You really don't care so you |
| Received | Jun 17, 2023 2:54:15 PM | They were never going to be an us. WAS there |
| Received | Jun 17, 2023 2:53:51 PM | US |
| Sent | Jun 17, 2023 2:53:35 PM | I'll let you think whatever the fuck you got thinking in your head. How did I lie to you? What did I lie about??? |
| Received | Jun 17, 2023 2:53:19 PM | You got what you wanted. Used me, play me, you LIED TO ME |
| Sent | Jun 17, 2023 2:52:24 PM | Hate |
| Sent | Jun 17, 2023 2:52:20 PM | I Haye this world |
| Received | Jun 17, 2023 2:52:19 PM | Was it worth it? |
| Sent | Jun 17, 2023 2:52:13 PM | I hate me |

| Received | Jun 17, 2023 4:04:38 PM | Call me before I flip out |
| Received | Jun 17, 2023 4:04:36 PM | Really why? |
| Sent | Jun 17, 2023 3:29:01 PM | We are done |
| Received | Jun 17, 2023 3:28:01 PM | If anything happens like a baby. I hope you will let me know. Honest I tried because I love you. Sorry for trying to trap you |
| Received | Jun 17, 2023 3:22:19 PM | Am I loveing you to much????????. |
| Received | Jun 17, 2023 3:15:17 PM | You really going to let this be the end of us. Was I not big enough? |
| Received | Jun 17, 2023 3:08:11 PM | I fucking hate you |

| Received | Jun 17, 2023 3:08:04 PM | Told you it has been a long time for me. It was no lie. I was real in want ing love. How are you different? I'll lose your number. Don't want to be around you anymore. You wanted me to hate you. Ok. I hate you. |
| Received | Jun 17, 2023 3:01:01 PM | Not a sorry, no no communication, what is love to you. |
| Received | Jun 17, 2023 2:57:21 PM | You never loved me. I see that now. |

29.     Ms. Krywyj filed a complaint with the local Kansas City police department against Defendant Nino, Jr. on June 17, 2023, the day he sexually assaulted and raped her.

30.     Shaken and scared, Ms. Krywyj contacted MPS leaders, including, but not limited to Operations Manager Richard Lephew, on Sunday, June 18, 2023, to tell them she wanted to meet in person to talk about what happened to her on June 17.

31.     Ms. Krywyj told the same leaders that she was "available anytime," and that she was "willing to work around MPS's time and availability."

32.     Ms. Krywyj finally arrived back at Farmington Hills, MI around 10:00am on June 19, 2023 and went directly to Operations Manager Richard Lephew's office to ask why she had not yet heard anything back from MPS's corporate offices about what had happened.  She broke down crying in his office talking about the incident of June 17.

33.    At that meeting with Mr. Lephew, he told her that her job may be in jeopardy depending on who was telling the truth about the incident.

34.    Ms. Krywyj finally met with MPS leaders on June 22, 2023, at 9am.  Attending that meeting were Ms. Krywyj, Lephew, Union Representative Robert Gonzales, and Labor Relations Specialist William Polk.  Tricia Jones, Defendant MPS's Human Resources Manager, did not attend due to "prior meetings."

35.    Prior to the June 22, 2023 meeting, Ms. Krywyj requested that she be allowed to bring her sister to the meeting so that she would be more comfortable discussing what had happened and to help her fully understand what was said.  Defendant MPS told her that she could not bring her sister to the meeting.

36.    Ms. Krywyj was emotional and physically sick throughout the meeting.  She felt like she was going to vomit while recounting what had taken place and had to have a garbage can put next to her. She told Defendant MPS personnel what had happened from Friday through Saturday and specifically about the rape.  During the meeting the other attendees took notes, writing down what she said, but she had no one there to write notes or take down what was being said.  Ms. Krywyj showed them her phone and Lephew took pictures of the texts on her phone that she had received from Defendant Nino, Jr.

37.    At that same meeting, MPS personnel told Ms. Krywyj that MPS planned to conduct its own investigation of the sexual assault and rape.  When she asked questions as to whether her work schedule would be changed, they told her no.  But, when the next schedule was released, her work schedule was negatively impacted – she got less work.  She did not get work out of town other than a few times to Missouri.

38.     As of June 19, 2023, Mrs. Krywyj was put on paid administrative leave pending an investigation.

39.     On or about June 28, 2023, Ms. Krywyj filed for a Personal Protection Order against Mr. Nino, Jr.  She notified Polk of the PPO.  Ms. Krywyj was told Defendant MPS would keep Defendant Nino, Jr. separated from her.

40.     On or about July 7, 2023, Lephew and Polk called Ms. Krywyj to ask if she was ready to come back to work on July 10, 2023.  She said yes, she had been ready.

41.     That same day of the telephone call, Ms. Krywyj found out she was pregnant as a result of the rape by Defendant Nino, Jr.  She notified Lephew on Sunday, July 9 about the pregnancy and that she had a medical appointment the next day to get confirmation after further testing.   She said she would not yet return to work because of the uncertainty of her pregnancy due to the rape. She was told by Defendant MPS that she had to make sure that she was pregnant.

42.     During that medical appointment on Monday, July 10, she received paperwork and a new schedule for a repeat ultrasound on July 20, 2023.  She called Lephew to update him and let him know that she shouldn't yet return to work because of the pregnancy.

43.     Saundra Wathen from Defendant MPS Group texted Ms. Krywyj, also on Monday, July 10, that she was scheduled for work on Tuesday, July 11.  When Ms. Krywyj contacted Lephew about the work schedule, he told her that her leave had ended on Sunday and any further days off work would not be paid.

44.     Although upset that Lephew and Defendant MPS Group were not honoring her as an employee and keeping their word that she would be given time to recover from the sexual assault and rape, Ms. Krywyj still reported for work that same day.  She experienced pain during her work shift and began bleeding but worked the entire day in pain.

45.     On Wednesday, July 12, 2023, she again went to work and experienced excruciating pain which forced her to her hands and knees crying.  She told her co-worker and supervisor, Tracy Sims, that she did not feel well and had to go home.  After exiting the office, she saw another supervisor, T.J. Jackson, and asked her if she could take her on the cart up to the front while she was crying and holding her left side.  Instead, the supervisor got into the cart with another co-worker and left Ms. Krywyj to walk to the front.

46.     On July 13, 2023, Ms. Krywyj emailed Polk, Lephew and Gonzalez that she had been admitted to the emergency room because of a potential ectopic pregnancy which was to be confirmed in two days after another beta human chorionic gonadotropin (B-HCG) test was conducted.  She also informed them that Defendant Nino, Jr. was served and had signed the PPO against him.

47.     On July 13, 2023, Polk confirmed the update from Ms. Krywyj.

48.     On Saturday, July 15, 2023, Ms. Krywyj emailed Polk, Lephew and Gonzalez that she was in Hurley Medical Center for the procedure to determine whether she had an ectopic pregnancy.  She was told she had an ectopic pregnancy.  Lephew confirmed the update on Monday, July 17.

49.     As a result of her ectopic pregnancy, Ms. Krywyj was scheduled to go to her doctor's office each week to make sure her HCG levels were decreasing.

50.     On July 19, 2023, Ms. Krywyj texted Saundra Wathan regarding other work that would be available closer to her home, due to the price of gas and getting to and from work, or weekend work with available overtime.  She was informed that she was not currently scheduled for the weekend and that Wathan could not guarantee who she would be working with.

51.     On July 20, 2023, Ms. Krywyj texted dispatch asking for more work and overtime jobs and wondering why other workers were getting work that she was not being offered.

52.     On July 24, 2023, Ms. Krywyj emailed Lephew and Polk to remind them that she was willing to and would rather work on sites out of town because of the incident and was ready to work.  On July 25, 2023, Lephew responded, "Thanks for the reminder!"

53.     On July 26, 2023, Ms. Krywyj was scheduled for blasting training at the shop.  She immediately saw Defendant Nino, Jr.'s vehicle in the parking lot.  She experienced anxiety throughout the day and met with Lephew about Defendant MPS's guarantee that she would not see Defendant Nino, Jr at the workplace.

54.     During that meeting, Lephew told her whether she went to the Kansas City project shutdown depended on whether Defendant Nino, Jr. went.  He said that Defendant Nino, Jr. was more of an asset and got to go to jobs first.  When Ms. Krywyj said that she was losing out on hours because of the possibility of seeing Defendant Nino, Jr. at the shop, in violation of the PPO, and that she was scheduled to be at the shop at 6:45am, Lephew told her that she could sleep in the parking lot if she was worried about being late for the job in the morning.  He expressed no concern of Defendant Nino, Jr. violating the PPO or of alerting Ms. Krywyj of when Defendant Nino, Jr. would be in the shop.

55.     On July 27, 2023, Ms. Krywyj called Gonzalez about the loss of hours and failure of Defendant MPS to protect her from Defendant Nino, Jr.  Gonzalez responded that if she removed the PPO that she could possibly work out of town for Defendant MPS Group.

56.     On that same day, Wathan texted Ms. Krywyj that she could work at the General Motors Tech Center job.  When she asked if she could ride with the crew and save money on gas

and miles on her car, Wathan stated that Ms. Krywyj was dispatched to drive to the project directly and if she could not, Wathan would find someone else.

57.     On July 28, 2023, Ms. Krywyj drove directly to the GM Tech Center job.  When she arrived, she identified the supervisor and saw that there was plenty of room for her in the vehicle used by the crew. During work that day, there were several times she asked for a ride with others on the same crew around the job site, but each time she was rebuffed.

58.     In early August, 2023, Ms. Krywyj was working at the Factory Zero site and observed multiple safety concerns, but when she informed MPS supervisors at the site she was ignored and told she would not be working at that site anymore.

59.     On Monday, August 7, 2023, Ms. Krywyj drove to the corporate offices to meet with Regional Safety Manager Daniel Warford and advised him of the safety concerns at the Factory Zero site.  Warford then issued a safety concern advisory that same morning to workers at the site as well as corporate officials.

60.     On August 31, 2023, Ms. Krywyj informed her supervisor Matt Finney that she would be running a little late and Finney told her it would not be a problem. Despite being told by Defendant MPS that Defendant Nino, Jr. would be kept away from the workplace when Ms. Krywyj was present, when she arrived for work at the shop she saw him.  When she informed MPS personnel about this failure to keep Defendant Nino, Jr. away when she was at the shop, dispatch manager Kevin Leboeuf told her that it was her fault because she was late for work.  Ms. Krywyj was later given a ½ point penalty for being late for work that day.

61.     After not being given work assignments for a long period of time, despite repeated requests for more work, on September 22, 2023 Ms. Krywyj emailed Lephew asking how she could file for underemployment.

62.    On September 27, 2023, Ms. Krywyj filed a grievance against Defendant MPS Group because it had given jobs that she wanted to work to temporary workers at the Sterling Stamping site in Sterling Heights.  The dispatch office never contacted Ms. Krywyj to offer her work for the emergency call at that site.

63.    On November 9, 2023, Ms. Krywyj filed her Charge of Discrimination with the EEOC.

64.    On October 1, 2024, the EEOC issued its Dismissal and Notice of Rights to Ms. Krywyj, granting her request for a Notice of Right to Sue.

**COUNT I – SEX DISCRIMINATION**
**TITLE VII (42 USC § 2000e)**
**(As to all Defendants)**

65.    Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

66.    At all times relevant herein, Plaintiff was an "employee" and Defendant MPS Group was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

67.    Plaintiff is a member of a protected class based upon her sex as a female.

68.    Defendants had a duty under Title VII not to discriminate against Plaintiff in her employment on the basis of sex.

69.    Defendants violated Title VII by discriminating against Plaintiff because of her sex in the following respects:

    a.    Defendant Nino, Jr. physically assaulted and raped Plaintiff on June 17, 2023;

    b.    Plaintiff has been subjected to foul and unacceptable language;

c.     Defendant MPS Group reduced and/or limited Plaintiff's hours, pay and allowed and/or participated in general mistreatment of Plaintiff from her co-workers and supervisors;

d.     Defendant MPS Group had knowledge of the hostile environment that Plaintiff was subjected to, but continued to put Plaintiff in a position where she was susceptible of harassment;

e.     Defendant MPS Group had knowledge of the hostile environment and Defendant Nino, Jr.'s physical assault and rape of Plaintiff and failed to take appropriate remedial steps to prevent the hostile environment and harassment;

f.     Treating Plaintiff differently than similarly situated non-female employees; and

g.     Otherwise discriminating against and disparately treating Plaintiff on the basis of sex with respect to terms, conditions, and privileges of her employment, as stated herein.

h.     Defendants' actions frustrated Plaintiff's ability to obtain work opportunities she repeatedly requested of Defendant MPS Group.

70.     As a direct and proximate result of Defendants MPS Group and Nino, Jr.'s unlawful actions against Plaintiff as described, Plaintiff suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2) personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

### COUNT II – SEX DISCRIMINATION
### VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT
### (As to all Defendants)

71.     Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

72.     At all times relevant herein, Plaintiff was an employee and Defendant MPS Group was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq*., as amended.

73.     Plaintiff is a member of a protected class based upon her sex as a female.

74.     At all times relevant herein, under the ELCRA Plaintiff had a right to employment free of discrimination based on her sex.

75.     Defendants violated Plaintiff's rights under the ELCRA by acts, including, but not limited to:

a.      Defendant Nino, Jr. physically assaulted and raped Plaintiff on June 17, 2023;

b.      Plaintiff has been subjected to foul and unacceptable language;

c.    Defendant MPS Group reduced and/or limited Plaintiff's hours, pay and allowed and/or participated in general mistreatment of Plaintiff from her co-workers and supervisors.

d.    Defendant MPS Group had knowledge of the sexually hostile environment that Plaintiff was subjected to, but continued to put Plaintiff in a position where she was susceptible of harassment;

e.    Defendant MPS Group had knowledge of the sexually hostile environment and Defendant Nino, Jr.'s physical assault and rape of Plaintiff and failed to take appropriate remedial steps to prevent the hostile environment and harassment;

f.    Treating Plaintiff differently than similarly situated non-female employees; and

g.    Otherwise discriminating against and disparately treating Plaintiff on the basis of sex with respect to terms, conditions, and privileges of her employment, as stated herein.

h.    Defendants' actions frustrated Plaintiff's ability to obtain work opportunities she repeatedly requested of Defendant MPS Group.

76.    As a direct and proximate result of Defendants MPS Group's and Nino, Jr.'s unlawful actions against Plaintiff as described, Plaintiff suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2) personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

## COUNT III – HOSTILE WORK ENVIRONMENT
## TITLE VII (42 USC § 2000e)
### (As to all Defendants)

77.     Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

78.     At all times relevant herein, Plaintiff was an "employee" and Defendant MPS Group was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

79.     Plaintiff is a member of a protected class based upon her sex as a female.

80.     Plaintiff was denied the opportunity to work to her full capacity by Defendant MPS Group, despite repeatedly asking for more work.

81.     Plaintiff was verbally and physically assaulted by Defendant MPS Group's employee, Defendant Nino, Jr., on site and while working for Defendants.

82.     Plaintiff was subjected to this conduct on the basis of her sex.

83.     The verbal and physical assaults included, but are not limited to:

    a.      Defendant Nino, Jr.'s sexual assault and rape of Plaintiff;

    b.      Defendant Nino, Jr.'s threatening and inappropriate comments regarding Plaintiff's safety;

      c.      Defendant MPS Group's failure to follow the dictates of the PPO against Nino, Jr. at the workplace; and

      d.      Defendant MPS Group's reduction in hours and work opportunities for Plaintiff as a result of her charges against Defendant Nino, Jr. and compliance demanded by the PPO against Defendant Nino, Jr.

84.     As a result of this conduct, Plaintiff was subjected to a sexually hostile work environment.

85.     The actions of Defendants were intentional.

86.     The actions of Defendants were unwelcome and without the consent of Plaintiff.

87.     Defendant Nino, Jr.'s unwelcome sexual assault and rape, Defendant MPS Group's failure to comply with the PPO against Nino, Jr., reduction in work opportunities, and failure to take appropriate remedial steps to prevent the hostile work environment and harassment was intended to and/or did substantially interfere with Plaintiff's employment in that it created an intimidating, hostile, and offensive work environment.

88.     The conduct of Defendant Nino, Jr. in physically and verbally assaulting Plaintiff because of her sex constitutes discrimination in violation of 42 USC § 2000e.

89.     The conduct of Defendant MPS Group in failing to comply with the PPO against Nino, Jr., reducing Plaintiff's work opportunities, and failure to take appropriate remedial steps to prevent the hostile work environment and harassment because of her sex constitutes discrimination in violation of 42 USC § 2000e.

90.     As a direct and proximate result of Defendants MPS Group's and Nino, Jr.'s unlawful actions against Plaintiff as described, Plaintiff suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2)

personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

## COUNT IV – HOSTILE WORK ENVIRONMENT
### ELLIOT-LARSEN CIVIL RIGHTS ACT
**(As to all Defendants)**

91.    Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

92.    At all times relevant herein, Plaintiff was an employee and Defendant MPS Group was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*, as amended.

93.    Plaintiff is a member of a protected class based upon her sex as a female.

94.    Plaintiff was verbally and physically assaulted by Defendant GPS Group's employee, Defendant Nino, Jr., on site while working for Defendant.

95.    Plaintiff was subjected to this conduct on the basis of her sex.

96.    The verbal and physical assaults included, but were not limited to:

    a.    Defendant Nino, Jr.'s sexual assault and rape of Plaintiff;

b.      Defendant Nino, Jr.'s threatening and inappropriate comments regarding Plaintiff's safety;

c.      Defendant MPS Group's failure to follow the dictates of the PPO against Nino, Jr. at the workplace;

d.      Defendant MPS Group's reduction in hours and work opportunities for Plaintiff as a result of her charges against Nino, Jr. and compliance demanded by the PPO against Nino, Jr.

97.     As a result of this conduct, Plaintiff was subjected to a hostile work environment.

98.     The actions of Defendants were intentional.

99.     The actions of Defendants were unwelcome and without the consent of Plaintiff.

100.    Defendant Nino, Jr.'s unwelcome sexual assault and rape, Defendant MPS Group's failure to comply with the PPO against Nino, Jr., reduction in work opportunities, and failure to take appropriate remedial steps to prevent the hostile work environment and harassment was intended to and/or did substantially interfere with Plaintiff's employment in that it created an intimidating, hostile, and offensive work environment.

101.    The conduct of Defendant Nino, Jr. in physically and verbally assaulting Plaintiff because of her sex constitutes discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*, as amended.

102.    The conduct of Defendant MPS Group in failing to comply with the PPO against Nino, Jr., reducing Plaintiff's work opportunities, and failure to take appropriate remedial steps to prevent the hostile work environment and harassment because of her sex constitutes discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*, as amended.

103.    As a direct and proximate result of Defendants MPS Group's and Nino, Jr.'s unlawful actions against Plaintiff as described, Plaintiff suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2) personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

## COUNT V – RETALIATION FOR COMPLAINT
### TITLE VII (42 USC § 2000e)
(As to Defendant MPS Group)

104.    Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

105.    At all times relevant herein, Plaintiff was an "employee" and Defendant MPS Group was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

106.    Ms. Krywyj filed two separate complaints for which 42 USC § 2000e-3(a) prohibits an employer from discriminating against an employee:

> a.    Ms. Krywyj filed a complaint on June 17, 2023 against a co-worker for a sexual assault and rape; and

       b.     Ms. Krywyj filed a grievance against Defendant MPS Group on September 27, 2023 for employing temporary workers before employing her for a job.

107.     Defendant MPS Group retaliated against her.

108.     Defendant Nino, Jr. sexually assaulted and raped Ms. Krywyj on June 17, 2023 when they were in Kansas City, MO for a MPS Group work project.

109.     Ms. Krywyj contacted the local Kansas City police that day to report the crime. She was transferred to a local hospital for a rape kit that day.

110.     Ms. Krywyj contacted Defendant MPS officials, including but not limited to Richard Lephew, to inform them of what occurred and to set up an in-person meeting to discuss the criminal incident and how she could continue to work for Defendant MPS with appropriate safeguards.

111.     On June 28, 2023, Ms. Krywyj was granted a PPO against Defendant Nino, Jr. prohibiting him from "approaching or confronting [her] in a public place or on private property" and "appearing at the petitioner's workplace or residence," among others.

112.     Defendants failed to take the appropriate corrective action against Defendant Nino, Jr. to protect Ms. Krywyj.

113.     Instead, Ms. Krywyj was retaliated against and/or discriminated against after reporting Defendant Nino, Jr.'s illegal actions while working for Defendant MPS Group.

114.     Defendant MPS was aware of Ms. Krywyj's repeated requests for more work, work on weekends, overtime work and work in other states but instead began limiting her work opportunities and failed to protect her from being at the workplace in the presence of Defendant Nino, Jr.

115.    Defendants' actions, by and through its agents, representatives and employees were intentional.

116.    As a direct and proximate result of Defendants MPS Group's unlawful actions against Plaintiff as described, Plaintiff suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2) personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendant MPS Group, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

### COUNT VI – RETALIATION FOR EEOC COMPLAINT
### TITLE VII (42 USC § 2000e)
### (As to Defendant MPS Group)

117.    Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

118.    At all times relevant herein, Plaintiff was an "employee" and Defendant MPS Group was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

119.   42 USC § 2000e-3(a) prohibits an employer from discriminating against an employee who has participated in an investigation or made a charge under Subchapter VI of Title 42, Chapter 21.

120.   Defendants retaliated against Ms. Krywyj after she filed charges with EEOC regarding the discriminatory behavior she was forced to endure.

121.   Ms. Krywyj filed a Charge of Discrimination with EEOC on November 9, 2023 for discrimination and retaliation.

122.   Defendants received knowledge of this Charge.

123.   Limiting an employee's hours after one files an EEOC Complaint is retaliatory/adverse employment action.

124.   Defendant MPS Group's actions, by and through its agents, representatives and employees were intentional.

125.   As a direct and proximate result of Defendants MPS Group's unlawful actions against Plaintiff as described, Plaintiff suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2) personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendant MPS Group, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-

judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

### <u>COUNT VII – ASSAULT AND BATTERY</u>
**(As to Defendant Nino, Jr.)**

126.    Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

127.    Defendant Nino, Jr. sexually assaulted and raped Ms. Krywyj on the morning of June 17, 2023 against her will and without her consent.

128.    Such actions by Defendant Nino, Jr. constitute an intentional and imminent threat of bodily harm to Ms. Krywyj.

129.    Ms. Krywyj could not stop Defendant Nino, Jr. from assaulting and battering her.

130.    Defendant Nino, Jr. actions were willful and/or intentional.

131.    As a direct and proximate result of Defendant Nino, Jr.'s unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2) personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendant Nino, Jr. and in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (As to Defendant Nino, Jr.)

132.    Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

133.    Defendant Nino, Jr.'s decision to sexually assault and rape Ms. Krywyj on the morning of June 17, 2023 against her will and without her consent was extreme and dangerous.

134.    Defendant Nino, Jr.'s decision to rape Ms. Krywyj was intentional.

135.    Defendant Nino, Jr.'s conduct has caused Ms. Krywyj to experience emotional distress.

136.    As a direct and proximate result of Defendant Nino, Jr.'s unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2) personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendant Nino, Jr., in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

Respectfully submitted by,

**GREWAL LAW PLLC**

Dated: December 16, 2024

By: */s/ Ayanna D. Neal* _____
Ayanna D. Neal (P64128)
*Attorneys for Plaintiff*
2290 Science Parkway
Okemos, MI 48864
(517) 393-3000
aneal@4grewal.com

## **JURY DEMAND**

Plaintiff Christine Krywyj, by and through her attorneys, GREWAL LAW PLLC, hereby

demands a trial by jury on all claims set forth above.

Respectfully submitted,

**GREWAL LAW PLLC**

Dated: December 16, 2024                    By:     _/s/ Ayanna D. Neal_____
                                                             Ayanna D. Neal (P64128)
                                                             *Attorneys for Plaintiff*
                                                             2290 Science Parkway
                                                             Okemos, MI 48864
                                                             (517) 393-3000
                                                             aneal@4grewal.com